UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA

--------------------------------------------------------

DAVID R. CUBBY, ESQ.                         :
       PLAINTIFF                          :
                                 :          Civil Action No. *5:24-cv-5087*
           vs.                                :
                                 :
CITY OF PATERSON; STATE OF NEW               :
JERSEY; COUNTY OF PASSAIC;                   :
COUNTY OF BERGEN; GOVERNOR                   :
PHIL MURPHY;  CAMELIA VALDEZ;                :          COMPLAINT
JERRY SPEZIALE; G&S HUNTERS;                 :
ALMA BANK; ALMA REALTY CORP.;                :
FABIAN-ALEXANDRIA, LLC; RICHARD:
BLENDER; NINA SURICH; JOHN                   :
MEOLA; JOHN SEGRETO; DAVID                   :
STANZIALE; SOHAIL MOHAMED;                   :
BONNIE MIZDOL; KIM CITRINO; RYAN:
MORIARTY; STEPHEN BUDELMAN;                  :
CHARLES CENTINARO; DOMENICK                  :
STAMPONE; JOHN ABDELHADI;                    :
                                 :
       DEFENDANTS.                        :
                                 :

--------------------------------------------------------

## **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 USC § 1983**

Comes now the plaintiff David R Cubby, Esq. appearing pro se and makes the following complaint under 42 USC §1983 for the violation of the plaintiff's civil rights to Due Process and Equal Protection Under the Law secured by the United States Constitution or by Federal law and guaranteed by the First, Second, Fourth, Fifth, and Fourteenth Amendments as well as the The Guarantee Clause, Article IV,  to the Constitution of the United States to deprive the plaintiff of property and due course of justice in violation of 42 U.S.C. sec. 1981, 42 U.S.C. sec. 1985 (3) and 42 U.S.C. sec. 1983.

## NATURE OF THE CASE

Plaintiff is an attorney licensed in the states of New Jersey and New York, and is admitted to practice before the Federal District Court of New Jersey.  The Defendants in this matter are participants in an unlawful criminal racket designed to control the City of Paterson along with its access to billions of dollars worth of federal and state grant funding.  Plaintiff is the target of a harassment campaign orchestrated by the Defendants and several high ranking members of New Jersey municipal, county and state and county government, as well as the Federal District Court for the State of New Jersey.  The objective of this retaliation is to harass Plaintiff, who has exposed numerous instances of public fraud and corruption in both the City of Paterson and Passaic County, NJ.

The retaliation against Plaintiff by the State of New Jersey has been widespread and comprehensive.  Plaintiff was in fact a highly rated attorney prior to these false, defamatory, and retaliatory attacks on Plaintiff's professional reputation.  It began with false attorney discipline complaints, which bore no substance and were made by judges and attorneys whom Plaintiff had definitively tird to gross public corruption.  Plaintiff has never been accused of wrongdoing by any client and has never had as much as a billing dispute.  Nonetheless, Plaintiff was railroaded through three levels of attorney discipline review without a single hearing into the allegations and without the State of New Jersey having to offer any evidence of misconduct.

The New Jersey Office of Attorney Ethics knowingly violated Plaintiff's due process rights, and refused to allow Plaintiff to contest the case.  In the Spring of 2019, Plaintiff directly accused Judge Randall Chiocca of corruption after Chiocca knowingly and willfully upheld a fraudulent tax lien forecosure in favor of political supporters of the New Jersey Democratic Party.  Plaintiff

immediately became the target of collateral attacks on his practice, with Ryan Moriarty of the Office of Attorney Ethics filing disciplinary charges against Plaintiff without actually substantiating any ethical violation. Moriarty and the New Jersey Office of Attorney Ethics would not permit Plaintiff to file an answer, ignored all rules of procedure, and knowingly misrepresened case law to strike the answers Plaintiff filed. Moriarty later admitted that he never conducted any investigation into Plaintiff. In May of 2024, the Supreme Court of New Jersey, without any charge having ever been clearly identified, without any hearings, without any evidence, findings of facts or conclusions of law, signed an order disbarring Plaintiff from practice in the State of New Jersey. The order is void as a matter of law due to a total absence of due process and gross violation of Plaintiff's rights as guaranteed by the Constitution the United States and Constitution the Constitution of the State of New Jersey.

Also in the Spring of 2019, Plaintiff was illegally evicted from his apartment in retaliation for exposing an unlawful scheme on the part of his landlord, Alma Realty Corporation, to build a sports arena in downtown Paterson, as well as unlawful schemes by said landlord to abuse landlord-tenant court procedure to exploit and intimidate their tenants. Richard Blender, an attorney for Alma Realty, routinely filed false eviction complaints against tenants, forcing them to appear at court, and then strong-armed them into paying Blender Alma Realty's counsel fees when he was not entitled to them.

The eviction was completed with the cooperation of multiple corrupt judges who refused to acknowledge that the landlord-tenant court lacked jurisdiction over the case, as it did not involve nonpayment of rent. In fact, a number of the ethical complaints filed against Plaintiff were filed in retaliation for Plaintiff's objections to this flagrantly unlawful conduct; it should also be noted

that Plaintiff represented himself pro se and as such was not engaged in the practice of law. During the course of the eviction, the Paterson Police Department unlawfully seized two historic and valuable long rifles that the PPD had confirmed on-site that Plaintiff lawfully owned and possessed.

In November of 2019, after being invited by the Paterson Police to G&S Hunters on Main Street in Paterson to recover his property, Plaintiff was attacked by the Paterson Police Department and falsely issued summonses for trespassing and resisting arrest by force. This was in direct retaliation for Plaintiff's exposure of police overtime fraud within the Paterson Police Department. Plaintiff has never actually been charged with any crime, and state prosecutors have directly refused to sign off on charging documents. They also refuse to dismiss the matter, and have attempted to force Platintiff into a bench trial when Plaintiff is clearly entitled to a grand jury indictment process and a trial by jury umder New Jersey state law. In June of 2021, after more than a year and a half of inexcusable and unethically manufactured delays, Paterson Municipal Court issued bench warrants for Plaintiff's refusal to appear for an unlawful and unconstitutional bench trial without as much as a pretrial brief being filed by the state. It has been directly alleged in dozens of instances that this warrant was unlawfully designed to bar Plaintiff from residing in the State of New Jersey, his native state and residence for over thirty years at the time of these unlawful acts.

The Defendants knowingly and purposefully delayed criminal proceedings against Plaintiff while unethically, dishonestly, and unconstitutionally preparing civil complaints to facilitate the unlawful and permanent seizure of Plaintiff's firearms. Passaic County Prosecutor Nina Surich deliberately misrepresented the existence of an investigation into the actions of the Paterson

Police Department, and expressly told Plaintiff that the matter was being investigated with Plaintiff as the victim. Thereafter, Surich unethically transferred the matter from Passaic County to Paterson Municipal Court with full knowledge that Plaintiff would be subject to further retaliation. Plaintiff was later informed by Passaic County officials that no investigation was opened by Surich.

Surich falsely stated that the charges concerning resisting arrest by force were to be dismissed, which never occurred. Surich falsely represented that Passaic County "could not" dismiss the other charges and that they had to be remanded to municipal court. Surich refused to allow Plaintiff to appear before a judge at two seperate pre-indictment conferences and transferred the matter back to municipal court over Plaintiff's objections. It was later revealed that Surich was in fact conspiring with Bergen County prosecutor Thomas Osadnik to file the civil complaint targeting Plaintiff's firearms and his right to purchase firearms in the State of New Jersey. Plaintiff never waived his right to a jury trial or the grand jury process and would never have done so.

Bergen County Prosecutor Thomas Osadnik thereafter filed the civil action seeking permanent confiscation of Plaintiff's firearms and revoking Plaintiff's firearms ID card. Osadnik was placed on notice of the fact that Plaintiff's criminal charges were still pending, and that the state opening a parallel civil matter concerning the same set of facts was a violation of Plaintiff's due process rights. Osadnik failed to state any reason whatsoever for the confiscation of Plaintiff's firearms; the complaint at best, through convoluted language, argues that Plaintiff could not possess firearms simply because he had been arrested. Osadnik offered no facts in support of his

petition and refused to provide any statute, case, or other authority when Plaintiff moved to dismiss the civil complaint as premature and because it failed to state a viable claim.

Osadnik was unlawfully, unethically and unconstitutionally shielded from accountability for his misconduct by Judge Christopher Kazlau in Bergen County, who simply refused to acknowledge the obvious procedural misconduct committed by Passaic and Bergen County prosecutors. Osadnik argued the case on behalf of the state and Osadnik on numerous occasions, making arguments for Osadnik in blatant violation of his obligation to preserve neutrality as the trier of fact. Kazlau waited for Plaintiff to be forced out of the state through the illegal warrant, and then issued an order compelling Plaintiff to sell the firearms. The state never objected or opposed Plaintiff's motion to dismiss the complaint, and Kazlau failed to issue findings of fact or conclusions of law on the issue, and refused to provide the same upon demands from Plaintiff.

Kazlau also refused to address deliberate spoliation of evidence on the part of the Defendants. The Paterson Police Department handed over falsely edited surveillance footage of the incident, deliberately removing a seven second clip in which Plaintiff was attacked. The footage was not produced through discovery, but through clandestine methods through which Defendants could deny any responsibility for chain of custody to the footage; a compact disc with the footage was left at Plaintiff's mother's residence, without any cover letter or any acknowledgment of who had provided the footage. The Paterson Police also deleted most of the footage captured outside the store, which demonstrates that the Paterson Police Department made no effort to check on the alleged victim/gun store owner, and merely attempted to surround the building to ambush Plaintiff. It is directly alleged that the Paterson Police Department were attempting to stage a justified shooting of Plaintiff while preventing any pedestrian witnesses.

Defendants knowingly and deliberately attempted to force Plaintiff to argue his case in a civil matter before Kazlau, who could apply "relaxed rules of evidence" due to it being a civil rather than criminal matter. A common theme in the misconduct of these judges is to issue decisions they know violate the law and civil rights, but which they also know will force a party into a lengthy appeals process just to resolve threshold issues. Between the Office of Attorney Ethics and the Bergen and Passaic Prosecutors, Plaintiff would be forced to fight a half dozen different cases simultaneously, and would be more than likely to fail to contest an issue, resulting in the development of a false procedural record against Plaintiff.

Judges such as Kazlau also attempted to use flawed orders and decisions as instruments of propaganda and misinformation. These courts have systematically refused to address clearly plead and evidenced allegations of knowing and intentional judicial misconduct while going out of their way to defame Plaintiff with false allegations. Without any medical training, Kazlau and his co-Defendants proceeded to portray Plaintiff as mentally unstable on the record and in their written orders. This samed narrative was repeated by multiple judges in the other related matters, all of whom were clearly trying to develop a record of Plaintiff's misconduct that they could use to falsely portray Plaintiff as in the wrong.

In June of 2021, prior to Kazlau's void and defamatory order, and after multiple attempts by Plaintiff to have Passaic County judges review the illegal warrant, Plaintiff was forced to relocate to the State of South Dakota or face physical harm from police officers in the State of New Jersey who would not question the illegal warrant. Upon information and belief, Defendants' motives were to falsely incarcerate Plaintiff in Passaic County Jail where he would be vulnerable to attack from felons and guards politically aligned with the county and the Paterson Police. In

August of 2021, Kazlau issued an order revoking Plaintiff's New Jersey Firearms Purchaser Identification Card, and ordering Plaintiff to sell his weapons within 120 days. Plaintiff directly informed Kazlau that Plaintiff had obtained residence in South Dakota, a state that were Plaintiff had an unquestioned right to possess his firearms, and a state that would not allow for the seizure of Plaintiff's weapons for the alleged violations even if Kazlau had complied with due process requirements. Kazlau refused to respond to Plaintiff's demands that his property be returned to him in South Dakota, a state that would not prevent Plaintiff from possessing firearms under the circumstances even if Defendants had followed due process.

Plaintiff now brings suit in the Federal District of South Dakota and requests the entry of an order for the return of Plaintiff's lawfully owned and illegally confiscated property, plus costs and damages.

## JURISDICTION

Jurisdiction is proper in the Federal District of South Dakota as Plaintiff has obtained a residence therein and is lawfully entitled to possess his lawfully owned property within its boundaries.

Jurisdiction is further proper in the Federal District of South Dakota as this matter involves a federal question, including but not limited whether Plaintiff has a right to possess his lawfully owned property in a state where Plaintiff is still permitted to purchase and possess firearms, and whether the State of New Jersey can prohibit Plaintiff from possessing firearms in another jurisdiction.

Jurisdiction is further proper in the  Federal District of South Dakota as the Federal District of New Jersey, the State of New Jersey, and the Counties of Passaic and Bergen have all shown

uncompromising criminal bias against Plaintiff and refuse to ackowledge his right to due process.

## PARTIES

All individual Defendants are, with the exceptions of Alma Realty Corporation and G&S Hunters,elected, appointed, or civil service appointed officers of the State of New Jersey and/or its political subdivisions, i.e. the City of Paterson, Passaic County and Bergen County. The Defendants holding public office do not qualify for immunity, as all Defendants at all times knew or should have known that their conduct violated state and federal law or was otherwise illegal and unconstitutional.

Defendants State of New Jersey, Passaic County, and Bergen County are sovereign entities and as such bear liability for the unlawful and unconstitutional acts of their respective subordinates. Nothing in this complaint shall bar the State of New Jersey, et al. from recovering damages paid out to Plaintiff from the individual Defendants as willing participants in a racketeering conspiracy to defraud the State of New Jersey and its residents.

### STATEMENT OF FACTS

1.      Plaintiff incorporates the preceding paragraphs as additional facts as if pleaded herein.

2.      In April of 2019, Plaintiff was illegally removed from his apartment located at 55 Church Street, Paterson New Jersey by the Paterson Police Department and the Passaic County Sheriffs.

3.      At the time of this illegal lockout, Plaintiff's eviction case was under a stay from the Appellate Division of the Superior Court of New Jersey.

4.      In the course of the illegal lockout, the Plaintiff willfully notified the Paterson Police Department of two firearms legally owned by Plaintiff and that Plaintiff wished to transport to his mother's residence in Waldwick, NJ, where Plaintiff would be resuming residence.

5.      The Paterson Police confirmed via radio that Plaintiff legally owned and possessed the firearms.

6.      The Paterson Police Department, over Plaintiff's objections, illegally confiscated the firearms and refused to provide any valid basis for their confiscation.

7.      The Paterson Police Department falsely told Plaintiff that if he provided a New Jersey Driver's License and his New Jersey Firearms Identification Card at Paterson Police Headquarters, that the rifles would be returned to him.

8.      Plaintiff appeared that same day with his Firearms ID card and his drivers license and the Paterson Police refused to return Plaintiff's property, and instructed him to contact the property sergeant.

9.      Upon contacting the property sergeant, Plaintiff was told that Plaintiff would have to accompany the Sergeant to a gun store, pay an FFL transfer fee and falsely certify that Plaintiff had abandoned the weapons in the apartment in order to have his property returned.

10.     Plaintiff refused to falsify a federal form and to be extorted when the Paterson Police Department had no legal basis to confiscate the firearms.

11.     Plaintiff sent the Paterson Police multiple demand letters for the return of his property.

12.     In late October of 2019, the Paterson Police Department called Plaintiff and told him that title to his firearms had been illegally transferred to G&S Hunters gun store on Main Street in Paterson, New Jersey.

13.     Plaintiff was further advised that if he produced his driver's license and firearms ID card at G&S Hunters, that Plaintiff's property would be returned to him.

14.     On November 2, 2019, Plaintiff appeared at G&S Hunters with his documents to recover his property.

15.     Plaintiff was told by the owner that Plaintiff would have to pay the transfer fee and sign off on a falsified federal firearms transfer form.

16.     If Plaintiff had signed off on the form, he would expose himself to liability not only for falsifying a federal form, but could then be subjected to a seizure action on the false grounds that Plaintiff had recklessly left the firearms unattended.

17.     Plaintiff refused to sign off on the form and informed the owner that Plaintiff was going to report the firearms as stolen to the New Jersey State Police.

18.     The store owner began to berate Plaintiff and told Plaintiff that he was calling the Paterson Police Department and that Plaintiff "had better leave;" it is directly alleged that the store owner was acknowledging the misconduct and was threatening Plaintiff with unjustified violence from the Paterson Police.

19.    Upon information and belief, the store owner contacted a Paterson police officer on the officer's private cell phone to avoid the phone call from being recorded on Paterson's 9-11 call capture system.

20.    Plaintiff was obligated to remain on the premises or risk being accused of fleeing the scene of a crime.

21.    Plaintiff attempted to contact the New Jersey State Police, the law enforcement agency with exclusive jurisdiction over firearms transactions in the state of New Jersey, to report the weapons stolen.

22.    Plaintiff requested that the trooper who answered the phone come down to the G&S Hunters to take a report.  The trooper refused to take a report and referred Plaintiff to the Passaic County Sheriff.

23.    While attempting to contact the Sheriff, Plaintiff observed a number of Paterson police officers circling Plaintiff's personal vehicle.

24.    At this time, Plaintiff opened the front door to G&S Hunters to invite the officers into the store.

25.    Upon opening the front door, Plaintiff discovered approximately twenty Paterson police officers engaged in blocking off traffic on the busy main street and clearing the sidewalks of potential witnesses.

26.     Plaintiff asked one of the officers immediately across from the front entrance of G&S "what are you guys doing?" as Plaintiff was confused as to their conduct and their failure to attempt to open the store prior to setting up an ambush.

27.     Plaintiff was then approached from his left by an officer who was later identified as William Niebancks in police reports.

28.     Niebancks asked  Plaintiff to "Please come here," and motioning for Plaintiff leave the entrance of the store.

29.     Upon information and belief, Niebancks and the responding officers were aware of the placement of the security cameras and were attempting to get Plaintiff to leave the camera's field of vision.

30.     Plaintiff asked Niebancks "why," and Niebancks responded "because I said so."

31.     The officers did not issue any commands and did not ask any investigatory questions.

32.     The officers did not say anything else to Plaintiff and never stated that he was under arrest or the target of an investigation.

33.     Plaintiff then said to Niebancks "hold on one second" and attempted to open an application on his cell phone with which to record the ensuing conversation.

34.     As Plaintiff was doing so, Neibancks stepped forward and without provocation grabbed Plaintiff by his arm when Plaintiff was not looking, and attempted to throw Plaintiff from the six inch high threshold of G&S Hunters and into his fellow officers.

35.     A number of the officers grabbed Plaintiff and attempted to pull him in different directions, away from the view of the security cameras.

36.     The officers began to scream obscenities in Plaintiff's ear, with one of them yelling "you're going to die motherfucker."

37.     Plaintiff never resisted the officers in spite of the fact that they had no probable cause to arrest.

38.     Plaintiff attempted to fall to the ground as is commonly commanded in the course of the arrest. The Paterson police officers instead attempted to pick Plaintiff up, and then slammed him face first into the sidewalk.

39.     The officers then proceeded to pile onto Plaintiff and strike him repeatedly, grabbing his head and slamming it into the concrete.

40.     It is directly alleged that the officers were trying to inflict physical harm and had no intent to subdue, and knowingly using their body weight and the sidewalk as weapons.

41.     Plaintiff was arrested and refused medical attention due to the fact that Plaintiff would be transported to St. Joseph's Hospital, which is operated by a board of trustees stacked with politicians and which has a reputation of failing to report police violence that commonly occurs in its hallways.

42.     Plaintiff was nonetheless forced to go to St. Joseph's Hospital, where Plaintiff provided a written statement rejecting medical attention for the same reason.

43.    Plaintiff suffered multiple broken ribs, potentially a cracked sternum, and likely damage to his intestines and/or gall bladder which continue to cause him pain to this day.

44.    Plaintiff was issued summonses accusing him of defiant trespass, obstructing an investigation, and resisting arrest by force.

45.    Plaintiff was scheduled for pre-indictment conferences in the Superior Court of New Jersey-Passaic County.

46.    Upon arriving at the first conference, Plaintiff was told without prior warning that the pre-indictment conference had been "rescheduled."

47.    Plaintiff objected to the rescheduling and demanded to see a judge.

48.    Passaic County Prosecutor Nina Surich falsely told Plaintiff that no judge was available and that the proceeding would be rescheduled.

49.    Plaintiff objected to Surich's unprofessionalism and failure to notify Plaintiff of the postponement.

50.    Upon returning for the second scheduled pre-indictment conference, Plaintiff was pulled aside by Surich to discuss how the case was proceeding.  Plaintiff recorded the conversation on his cellular device.

51.    Surich apologized to Plaintiff, and told him that the matter was being investigated with Plaintiff as the victim.

52.    Surich falsely represented to Plaintiff that Passaic County was not interested in prosecuting the case.

53.    Surich further falsely represented that the resisting arrest charges were going to be dismissed.

54.    Surich further falsely represented that Passaic County could not dismiss the rest of the charges but refused to provide any legal explanation for her argument.

55.    Surich further stated that the matter had to be remanded to municipal court to be dismissed.

56.    Plaintiff objected to the remand and rejected Surich's argument that the matter could not be dismissed at the county level.

57.    Plaintiff advised Surich that Paterson Municipal Court was controlled by Domenick and Vincenzo Stampone, the former being Paterson's Corporation Counsel.

58.    Stampone's brother Vincenzo was and continues to be a municipal prosecutor in Paterson who routinely prejudices the defendants that appear in his cases.

59.    Domenick Stampone was a person of interest in many of Plaintiff's allegations of public fraud and corruption, and Plaintiff advised Surich of the same.

60.    Plaintiff had in fact raised numerous examples of fraud committed under Stampone's signature in multiple cases before the New Jersey Superior Courts.

61.     Surich ignored all of Plaintiff's arguments and matter-of-factly stated that the matter would be transferred back to municipal court.

62.     Plaintiff later learned that none of the charges had been dismissed, and the municipal courts attempted to force Plaintiff into a bench trial on the indictable offense of resisting arrest by force.

63.     At this time Plaintiff still had not had an initial appearance.  The matter was scheduled in Paterson Municipal Court.

64.     Upon arrival at Paterson Municipal Court, and without prior notice to Plaintiff, Plaintiff was told by the municipal prosecutor Rachel Nguyen that Paterson would be seeking to transfer the matter to another jurisdiction citing a conflict of interest.

65.     No conflict of interest existed between Plaintiff and Nguyen and Plaintiff had never met Nguyen previously.

66.     It is unknown on what specific grounds that Nguyen was asserting her conflict of interest because the municipal court judge did not require her to specify one.

67.     Plaintiff moved orally to dismiss the charges, citing conflicting statements in the police reports that could not be reconciled, as well as on the grounds that the Paterson Police conducted no investigation and had no reason to arrest Plaintiff.

68.     In spite of having just claimed a conflict of interest, the municipal prosecutor objected to the dismissal, albeit in cursory, haphazard, and legally deficient statements.

69.    The Paterson Municipal Court judge ignored Plaintiff's arguments and granted the prosecution's motion to transfer to an alternate venue.

70.    Plaintiff's matter was then transferred to Haledon, New Jersey, a municipality bordering Paterson...and where Domenick Stampone held the office of mayor.

71.    By this point it was mid-2020 and Plaintiff still had not had an initial appearance.

72.    Pursuant to New Jersey Rules of Court R. 3:4-2, which states that "if a defendant is released on a complaint-summons, the first appearance shall be held no more than 60 days after the issuance of the complaint-summons or the defendant's arrest."

73.    Plaintiff demanded findings of fact and conclusions of law concerning the transfer of venue and denial of Plaintiff's motion to dismiss.  Paterson Municipal Court refused to provide them.

74.    The order transferring the matter to Haledon was not signed by the judge who heard the matter, who was a middle-aged African American woman; instead it was signed by Judge John Abdelhadi, a Paterson Municipal Court judge whom Plaintiff had previously accused of unlawfully targeting and retaliating against Paterson community leaders.

75.    Abdelhadi did not hear the case, was not assigned to it, and was not present for Plaintiff and the Prosecution's motions.

76.    It is direcly alleged that this was done to create a confusing and disjointed record and in a braoad pattern through which Defendants sought to avoid accountability for their unlawful acts.

77.    By May of 2020, the State of New Jersey was already embroiled in the COVID-19 crisis. Governor Phil Murphy had begun declaring a state of emergency and issuing stay at home and lockdown orders in March of 2020.

78.    It is directly alleged that the Defendants knowingly and purposefully attempted to exploit the lockdown order to force Plaintiff into a bench trial in a closed courtroom where Plaintiff would be denied the benefit of witnesses to proceedings and public support.

79.    A hearing was scheduled in Haledon Municipal Court for May 29, 2020.

80.    The case was assigned to Municipal Court Judge John Segreto.

81.    Sometime before that date, Plaintiff was advised that the prosecutor assigned to the case was Rachel Nyugen, the same prosecutor as in Paterson Municipal Court.

82.    Plaintiff was advised that Nyugen was seeking to excuse herself again for a conflict of interest, but no motion was served and no correspondence issued regarding the issue.

83.    On May 27, 2020, Plaintiff contacted the court administrator to inquire into the status of the hearing.   Plaintiff was informed that the matter was to be adjourned without notice to Plaintiff.

84.    Plaintiff objected to the adjournment and demanded a hearing.   Haledon refused to respond to Plaintiff's demand and adjourned the matter without confirming the adjournment to Plaintiff.

85.    Plaintiff demanded discovery, specifically the additional and likely deleted footage that had been thus far withheld from the copies already provided to Plaintiff.

86.    The matter was not rescheduled by Haledon Municipal Court until July 21, 2020.

87.    At the hearing, Segreto refused to schedule a probable cause hearing or conduct any first appearance procedures.

88.    Segreto refused to acknowledge the spoliation of evidence issue and refused to compel the prosecution to account for or otherwise obtain the missing surveillance footage.

89.    Plaintiff demanded the municipal prosecutor provide an indictment or accusation as required by New Jersey Rules of Court R. 3:7-2, which states that "[e]very crime shall be prosecuted by indictment unless the defendant, after having been advised of the right to indictment, shall waive the right in a signed writing, in which case the defendant may be tried on accusation. Such accusation shall be prepared by the prosecuting attorney and entitled and proceeded upon in the Superior Court. Nothing herein contained, however, shall be construed as limiting the criminal jurisdiction of a municipal court over indictable offenses provided by law and these rules."

90.    Defendant has never waived indictment.

91.    It is alleged that Defendants knowingly avoided filing charging doucments to avoid accountability for proceeding with the case when there was clear, convincing and uncontrovertible evidence that Plaintiff did nothing wrong and was targeted for retaliaion.

92.    Segreto refused to compel the prosecution to produce an indictment or accusation, and argued on behalf of the municipal prosecutor when Plaintiff raised the issue.

93.    Without these documents, it is a legal fact that Plaintiff has never been charged by the State of New Jersey.

94.    Plaintiff demanded a jury trial.

95.    Segreto ignored these issues altogether and attempted to schedule a bench trial without any charges having been filed.

96.    Throughout the course of proceedings, Plaintiff demanded probable cause hearings which the court is required to conduct.  No probable cause hearing was ever scheduled.

97.    With the courts closed due to the COVID 19 crisis, Segreto began scheduling video conferences for Plaintiff's hearings.

98.    Segreto intentionally spoke over Plaintiff whenever Plaintiff attempted to argue his points and demand relief for spoliation of evidence and for resolution of at least a dozen fatal procedural flaws that Segreto had so far refused to address.

99.    On multiple occasions Segreto mentioned scheduling a bench trial when no preliminary procedures had been completed.

100.    Segreto abused the use of the mute feature in order to prevent Plaintiff from properly recording his objections, moving orally for relief, or otherwise allowing Plaintiff to raise issues on the record.

101.    Plaintiff also began to make independent recordings of Segreto's hearings because of Segreto and the Defendants' demonstrated willingness to falsify court records.

102.    Segreto threatened Plaintiff with contempt charges on multiple occasions for recording the proceedings based off of a New Jersey Supreme Court directive that limited the general public's right to broadcast or record in-court proceedings during the COVID crisis.

103.    The directive was clearly directed to the general public and in no way limited the rights of attorneys and litigants to record proceedings for the purpose of note taking or preserving an independent record.

104.    The directive also did not apply as no proceedings were held in any courthouse, all were conducted via Xoom.

105.    Plaintiff demanded Segreto's recusal for his failure to remain impartial and his blatant refusal to comply with Court Rules and due process. Segreto refused to respond.

106.    Plaintiff wrote Judge John Meola, Presiding Judge for Municipal Courts in Passaic County, to raise the numerous failures of his subordinates to follow court rules and maintain due process. Meola never responded.

107.    In October of 2020, Segreto, as an attorney in private practice, filed a lawsuit against the Paterson Museum concerning a harassment claim raised by one of the Museum's employees.

108.    Plaintiff was a trustee of the Paterson Free Public Library, which operates the Paterson Museum, as well as Chairman of the Paterson Museum Committee of that body.

109.    It is alleged that Segreto intentionally accepted the case knowing he had a conflict of interest with Plaintiff, or because Segreto intended to use the case to develop a false and defamatory narrative concerning Plaintiff's handling of the matter as Trustee and Chairman.

110.    Segreto never addressed Plaintiff's demand for his recusal nor the conflict of interest issue.

111.    Instead, Plaintiff's case was transferred from Haledon to North Haledon Municipal Court, without a motion, notice to Plaintiff, or as much as an order memorializing the change of venue.

112.    The matter was then assigned to John Meola.

113.    Plaintiff wrote Meola to demand responses on all of the issues that Segreto and Passaic County had refused to address. Meola ignored them.

114.    Meola scheduled a hearing in March of 2021. During the hearing, Meola made allusions to scheduling a probable cause hearing and adjourned the hearing after the municipal prosecutor, David Stanziale, promised to resolve the outstanding discovery obligations.

115.    After the hearing, Plaintiff contacted Stanziale to resolve the outstanding discovery issues.

116.    Stanziale refused to provide any discovery or any information regarding the chain of custody of the altered surveillance footage.

117.    Plaintiff demanded a case management conference from Meola, which was held via Xoom. Instead of addressing the fact that Stanziale falsely represented that the state would cooperate on the discovery issues, Meola hurriedly scheduled an "evidentiary hearing" and abruptly terminated the case management conference.

118.    Plaintiff wrote Meola explaining that he did not understand Meola's directives and objected to proceeding with any kind of testimony while Plaintiff did not have the benefit of discovery.

119.    Plaintiff requested that the Court provide additional explanation for what was to occur during the scheduled hearing.

120.    Meola did not respond, and did not adjourn the hearing as Plaintiff had suggested as an alternative.

121.    The hearing was again held via Xoom.    Meola attempted to swear in witnesses immediately upon Plaintiff signing into the meeting, without addressing Plaintiff's correspondence and in a clear attempt to ambush Plaintiff into a hearing he for which he could not possibly have prepared.

122.    Plaintiff objected to Meola's conduct and refused to participate in the sham proceeding.

123.    Plaintiff directly accused Meola of deliberately ignoring court rules and procedure to prejudice Plaintiff and demanded Meola's recusal.    Meola attempted to berate Plaintiff without addressing his obvious bias towards the prosecution.

124.    Plaintiff advised Meola that he was independently recording the proceedings, and Meola threatened to hold Plaintiff in contempt if he did not stop recording them.

125.    Plaintiff refused to stop recording, and Meola ordered that Plaintiff was in contempt of court.

126.    Plaintiff demanded a jury trial on the contempt charges, and Meola falsely argued that he was not entitled to one.

127.    Meola failed to issue a contempt order and upon information and belief no case was ever opened, and Meola was merely issuing legal threats.

128.    Following the hearing, Meola scheduled the matter for a bench trial in April of 2021 with full knowledge that no charging documents had ever been filed.

129.    Plaintiff was never served with a trial brief by Stanziale or any of the other prosecutors, as required by New Jersey Rules of Court.

130.    Plaintiff wrote Meola and the Court, objecting to the scheduling of the trial as being in clear violation of Plaintiff's rights and in flagrant disregard for due process.

131.    Plaintiff further refused to appear at trial or respond to any directive of the court without charging documents, resolution of the discovery issues, and resolution of all outstanding procedural issues.

132.    Meola also ordered Plaintiff to appear for an in person trial while the New Jersey Courts were still closed to the public due to the COVID crisis and most trials were being continued.

133.    It is directly alleged that Meola was attempting to force Plaintiff into appearing in a closed court room where Plaintiff could easily be charged with contempt and imprisoned without a hearing.

134.    Plaintiff did not appear for trial and Meola took no action other than to reschedule it, even after Plaintiff had expressly refused to appear.

135.    A second trial date was scheduled for June of 2021. Plaintiff again informed the court that he would not appear for a trial for which he was deprived of due process, discovery and had not even been charged.

136.    Stanziale never served Plaintiff with a trial brief as required by Court Rules.

137.    Plaintiff did not appear at the second scheduled trial date.

138.    At some point thereafter, without a motion and without notice to Plaintiff, Meola transferred the case back to Paterson Municipal Court, which had previously declared a conflict of interest over the case.

139.    Thereafter, a warrant was issued by Paterson Municipal Court for failure to appear at trial.

140.    Upon information and belief, the warrant was not issued under the authority of any judge of Paterson Municipal Court.

141.    It is directly alleged that this was done so that no direct evidence would exist of which judge issued the warrant, which is void, clearly unlawful and retaliatory.

142.    In the following month, Plaintiff requested that Judge Sohail Mohammed, Presiding Judge for the Criminal Division of Passaic County Superior Court, review the illegal warrant.

143.    Mohammed, who had supervisory authority over all criminal matters filed in Passaic County, refused to schedule a hearing to review the illegal warrant.

144.    Plaintiff also demanded investigations into Defendants conduct by nearly every law enforcement active in the State of New Jersey, including but not limited to the New Jersey Attorney General's Office, the U.S. Attorney for the District of New Jersey, the Federal Bureau of Investigations, the Passaic County Sheriffs, the Passaic County Prosecutor's Office, and the Bergen County Prosecutor's Office.

145.    Most of these agencies did not as much as respond to Plaintiff's calls and letters.

146.    With no avenue for Plaintiff to contest the illegal warrant, and being subject to wrongful arrest and physical harm from potential arresting officers and corrections officers, Plaintiff relocated to the State of South Dakota in June of 2021.

147.    Following Plaintiff's relocation, Kazlau scheduled hearings in Plaintiff's civil matter concerning the illegal confiscation of Plaintiff's weapons.

148.    Kazlau was notified Plaintiff was out of state and the target of an illegal warrant, yet refused to review the warrant and refused to allow Plaintiff to appear telephonically.

149.    Kazlau entered an order resciding Plaintiff's NJ Firearms Purchaser ID card.

150.    No provision of New Jersey state law requires a resident or nonresident to have a NJ Firearms Purchaser ID card to possess weapons.

151.    Kazalau also ordered Plaintiff to sell the firearms within 120 days or else they would be "subject to destruction."

152.    Plaintiff wrote Kazlau and the owner of G&S Hunters and informed them that Plaintiff had relocated to South Dakota, were no matter what their decision was, Plaintiff was permitted to own and possess the weapons.

153.    Kazlau ignored Plaintiff's letter and to this day Plaintiff does not know what happened to the weapons.

154.    Upon information and belief, the Paterson Police Department and G&S Hunters were and continue to illegally sell seized weapons back onto the streets through G&S Hunters.

**COUNT ONE**

**VIOLATIONS of 42 U.S.C. § 1985(3)**

**CIVIL RIGHTS CONSPIRACY**

155.    Plaintiff has been directly harmed by a civil rights conspiracy targeting Plaintiff's right to bear arms as guaranteed by the Second Amendment of the Constitution of the United States of America.

156.    Plaintiff has not been accused of any conduct that would justify the unlawful seizure of Plaintiff's firearms in the State of New Jersey or the State of South Dakota.

157.    Defendants have filed civil and criminal complaints against Plaintiff with full knowledge that the Defendants have failed to plead any facts that would permit them to proceed with said petitions and complaints.

158.    Defendants have proceeded against Plaintiff through civil and criminal complaints with full knowledge that the complaints are not supported by and are in fact in gross violation of existing law.

159.    Defendants have engaged knowingly in a pattern of conduct designed to cover up their retaliatory and unlawful conduct.

160.    Defendants have knowingly and purposely attempted to deprive Plaintiff of due process, namely the ability to respond and defend against the civil and criminal complaints in order to establish a false and defamatory narrative against Plaintiff.

161.    Defendants are knowingly and willfully abusing their offices, positions and titles to intimidate Plaintiff and the voting public by unlawfully attempting to control state and local government in violation of federal, New Jersey, and South Dakota law.

162.    Defendants have done so in retaliation for Plaintiff exposing corruption and demanding transparency in city and county government in compliance with federal, New Jersey and South Dakota law.

163.    Defendants have committed these offenses in retaliation for Plaintiff's defense of historic properties and historic preservation resources that Defendants were unlawfully funneling to their supporters.

164.    Defendants have committed these offenses in retaliation for Plaintiff having opposed their unlawful actions in defense of taxpayer's rights.

165.    While committing these offenses, Defendants have attempted to hide behind their offices and positions of power to grant their unlawful actions a presumption of legality with full knowledge that their conduct was in fact retaliatory and unlawful.

166.    Defendants have attempted to abuse procedural rules by refusing to provide legally sufficient justification for their actions, often ignoring the need to conduct hearings to avoid a public record of their being on direct notice of the illegality of their actions.

167.    The above conduct by Defendants are extrinsic frauds to obstruct justice and commit fraud on the New Jersey state courts on the specific times and dates shown on the appearance dockets for the subject actions.

168.    The conduct of Defendants deprived Plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

169.    Defendants have engaged in their unlawful and retaliatory conduct in order to deprive Plaintiff not only of his rights in the State of New Jersey, but in the State of South Dakota.

170.    Defendants have unlawfully prevented Plaintiff from exercising his rights under South Dakota law, and as such have unlawfully appointed themselves arbiters over the laws of South Dakota in violation of Full Faith and Credit Clause of the United States Constitution.

171.    The Plaintiff is a citizen of the United States of America, and is entitled to due process under the Constitution of the United States and the Constitutions of the States of New Jersey and South Dakota.

172.    Plaintiff was deprived of criminal and civil due process rights in all cases in which Plaintiff was falsely labeled a Defendant/Respondent in actions before New Jersey Municipal Courts, Superior Courts, and the Office of Attorney Ethics.

## COUNT TWO
### ABUSE OF PROCESS AND MALICIOUS PROSECUTION
### 42 U.S.C. § 1983

173.    Defendants, acting under color of state law, willfully and knowingly abused their power and process in a direct attempt to damage Plaintiff and his clients.

174.    Defendants willfully and knowingly attempted to falsify the record in Plaintiff's Criminal and Civil matters through various means.

175.    Defendants willfully and knowingly attempted to deprive Plaintiff of probable cause hearings that are mandatory under the New Jersey Rules of Court and relevant statutes.

176.    Defendants willfully and knowingly attempted to deprive Plaintiff of pre-indictment and preliminary hearings.

177.    Defendants willfully and knowingly deprived Plaintiff of a speedy trial for the purpose of interfering with his professional practice and his civil liberties.

178.    Defendants willfully and knowingly deprived Plaintiff discovery.

179.    Defendants willfully and knowingly destroyed exculpatory evidence for the purpose of continuing their false and fraudulent prosecution and harassment.

180.    Defendants willfully and knowingly prevented any record of chain of custody to the destroyed evidence and actively prevented Plaintiff from obtaining the same.

181.    Defendants refused to hold hearings in the face of clear, concise, and direct allegations of misconduct among themselves and their subordinates.

182.    Defendants actively used their influence and the abused the power of their offices to prevent investigation into said misconduct.

183.    Even in the event that Defendants were unaware of the illegality, Defendants failed to take appropriate action in response to Plaintiff's clear, concise and direct demands for hearings.

184.    Defendants willfully and knowingly attempted to deprive Plaintiff of his right to due process.

185.    Defendants willfully and knowingly attempted to conceal their egregious violations of due process through falsification of court records and fraud upon the Courts of New Jersey.

186.    Defendants knowingly and willfully issued arrest warrants without having filed charges in an attempt to frustrate Plaintiff's freedom of movement and to force Plaintiff to relocate from the State of New Jersey under the threat of unlawful arrest, serious bodily harm and death.

187.    Defendants knowingly and wilfully abused Plaintiff's rights in the State of New Jersey, and subsequently conspired to prevent Plaintiff from enjoyment of his lawfully owned property in the State of South Dakota.

188.    Defendants have refused to return Plaintiff's rightfully owned property without justification or legal cause.

189.     Defendants drafted legal orders designed to circumvent South Dakota law and prevent Plaintiff from enjoying his rightfully owned property in South Dakota were Plaintiff maintains a residence.

190. ` Defendants are unlawfully and without jurisdiction attempting to impose their draconian, nonsensical, and unconstitutional views on gun ownership on residents of the State of South Dakota.

## COUNT THREE:
## CONDUCT AND PARTICIPATION IN A RICO ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITIY:
### 18 U.S.C. §§ 1961(5), 1962(c)

191.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.   Substance prevails over form.

192.     At various times and places partially enumerated in Plaintiff's documentary material, all Defendants did associate with a RICO enterprise of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

193.     Namely, Defendants have conspired to control the judicial process in the State of New Jersey, turning ito into a weapon against political dissent that does not serve the interests of justice.

Page 33 of 38

194.    Defendants have conspired to control the judicial process in the State of New Jersey for the purpose of maintaining said courts as a platform for judicial activism with the full intent of undermining the legislative process.

195.    Defendants are knowingly playing gatekeeper to the courts of the State of New Jersey in order to retaliate against Plaintiff and other parties similarly situated.

196.    Defendants are knowingly and intentionally using the courts of the State of New Jersey to create false and defamatory court documents that can be used to bar Plaintiff and other similarly situated parties from public office, the practice of law, and to intimidate them into abandoning their Constutional rights.

197.    Defendants are engaging in this conduct for the purpose of preserving a political monopoly over federal and state grant funding in the State of New Jersey.

198.    Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

199.    During the ten (10) calendar years preceding October of 2022, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities).

200.    Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten

continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. 1962(c) supra.

201.    Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above are to be liberally construed by this honorable Court.  Said construction rule was never codified in Title 18 of the United States Code, however.  Respondeat superior (as explained above).

### COUNT FOUR:
### Conspiracy to Engage in a Pattern of Racketeering Activity:
### 18 U.S.C. §§ 1961(5), 1962(d)

202.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

203.    At various times and places partially enumerated in Plaintiff's documentary material, all Defendants did conspire to acquire and maintain an interest in a RICO enterprise engaged in a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(b) and (d).

204.    At various times and places partially enumerated in Plaintiff's documentary material, all Defendants did also conspire to conduct and participate in said RICO enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(c) and (d).  See also 18 U.S.C. §§ 1961(4), (5) and (9).

205.    During the ten (10) calendar years preceding October 2024, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. 1962(d).

206.    Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. 1962(d) (Prohibited activities supra).

207.    Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above are to be liberally construed by this honorable Court.  Said construction rule was never codified in Title 18 of the United States Code, however.  Respondeat superior (as explained above).

## DEMAND FOR RELIEF

The Plaintiff respectfully seeks an order:

1. Directing the State of New Jersey to return Plaintiff's property to Plaintiff at Plaintiff's address of residence at the expense of the State of New Jersey;

2. Awarding punitive damages to Plaintiff in the amount of $500,000.00, to be paid by the State of New Jersey;

3. The State of New Jersey shall have recourse to recover this and any additional sums from the individual Defendants jointly and severally;

4. All other relief the Court finds necessary and just.

David R. Cubby, Esq.

Plaintiff appearing *Pro se*

November 25, 2024

## **VERIFICATION**

I, David R. Cubby, declare as follows:

1.      I have personal knowledge of myself and my activities, including those set out in the

foregoing Complaint, and if called upon to testify I would competently testify as to the matters

stated herein.

2.      I verify under penalty of perjury under the laws of the United States of America that the

factual statements in this Complaint concerning myself and my activities are true and correct.

Date: November 25, 2024

Plaintiff Appearing Pro Se

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
David R Cubby, Esq

**DEFENDANTS**
City of Paterson; State of New Jersey; County of Passaic; County of Bergen; Governor Phil Murphy; Camelia Valdez;

**(b)** County of Residence of First Listed Plaintiff  Lawrence, SD
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Passaic NJ
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [x] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
2nd Amendment, U.S. Constitution; 14th Amendment, U.S. Constitution; Racketeer Influenced and Corrupt Organizations Act
Brief description of cause:
Plaintiff deprived of possession of lawfully owned firearms in retaliation for exposing racketeering and government corruption.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $  500,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE  Madeline Cox Arleo
DOCKET NUMBER  2:23-cv-02842-MCA-CLA (DCNJ)

DATE  11/21/2024
SIGNATURE OF ATTORNEY OF RECORD  /s/ David R. Cubby, Esq. (pro se)

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE